**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

DALLAS BUYERS CLUB, LLC,

a Texas Limited Liability Company,

       Plaintiff,

  v.

JOHN DOES 1-20,

       Defendants.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff Dallas Buyers Club, LLC ("Dallas Buyers Club"), a Texas limited liability company, sues Defendants John Does 1-20 (collectively "Defendants") and alleges as follows:

**NATURE OF THE ACTION**

1. This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the Copyright Act").

2. The Plaintiff alleges that each Defendant is liable for:

(a) direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and

(b) contributory copyright infringement.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4. As shown on Exhibit A attached to this Complaint, each of the Defendants' acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located within this District, and therefore, pursuant to Colo. Rev. Colo. Rev. § 13-1-124, this Court has personal jurisdiction over each Defendant because: (a) each Defendant committed the tortious conduct alleged in this Complaint in the State of Colorado, and/or (b) has engaged in business transactions in the State of Colorado.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because: (a) a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) the majority of the Defendants reside, and therefore can be found, in this State. Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the majority of the Defendants or Defendants' agents reside or may be found in this District.

## PARTIES

6. The Plaintiff is a limited liability company organized and existing under the laws of the State of Texas and has its principal place of business at 2170 Buckthorne Place, Suite 400, The Woodlands, Texas 77380.

7. Each Defendant is known to the Plaintiff only by an IP address.

8. An IP address is a number that is assigned by an Internet Service Provider (an "ISP") to devices, such as computers, that are connected to the Internet.

9. The ISP to which a Defendant subscribes can correlate a Defendant's IP address to a Defendant's true identity.

## JOINDER

10. Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiff asserts that: (a) each of the Defendants is jointly and severally liable for the infringing activities of each of the other Defendants; (b) the infringement complained of herein by each of the Defendants was part of a series of transactions over the course of a relatively short period of time, involving the exact same piece of the Plaintiff's copyrighted Work, and was accomplished by the Defendants acting in concert with each other; and (c) there are common questions of law and fact. Indeed, the claims against each of the Defendants are identical, and each of the Defendants used the BitTorrent protocol, jointly and in concert, to infringe the Plaintiff's copyrighted Work.

## FACTUAL BACKGROUND

### I. *The Plaintiff Owns the Copyright to the Motion Picture*

11. The Plaintiff is the owner of United States Copyright Registration Number PA 1-873-195 (the "Registration") for the motion picture entitled "Dallas Buyers Club" (the "Work"), a film that has been shown in numerous Colorado theaters and has won multiple Academy Awards, including Best Actor in a Leading Role, Matthew McConaughey, and Best Supporting Actor, Jared Leto (*see* Exhibits B and C attached to this Complaint).

12. The Work was registered on or about November 13, 2013.

13. A copy of an Internet screen shot from the U.S. Copyright Office's website evidencing, among other things, the Plaintiff's ownership of the Registration and the Registration date, is attached to this Complaint as Exhibit B.

II.   *The Defendants Used BitTorrent To Infringe the Plaintiff's Copyright*

14. BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data; indeed, it has been estimated that users of the BitTorrent protocol on the Internet account for over a quarter of all internet traffic. The creators and users of BitTorrent developed their own lexicon for use when talking about BitTorrent.[1]

15. The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

A.   *Each Defendant Installed a BitTorrent Client onto his or her Computer.*

16. Each Defendant installed a BitTorrent Client onto his or her computer.

17. A BitTorrent "Client" is a software program that implements the BitTorent Protocol. There are numerous such software programs including μTorrent and Vuze,

---

[1] Definitions of relevant portions of the BitTorrent vocabulary, which are fully incorporated herein, are set forth in several recent federal cases, including cases in this judicial district. *See BKGTH Productions, LLC v. John Does 1-3, 5-10, 12, 15-16,* Civil Action No. 13-cv-01778-WYD-MEH, Dkt. #54, December 9, 2013*; Malibu Media, LLC v. John Does 3,9,16, and 17,* Civil Action No. 12-cv-02392-REB-MEH, Dkt. #67, February 12, 2013; *both citing Patrick Collins, Inc. v. John Does 1-28,* No. 12-13670, 2013 WL 359759 (E.D. Mich. Jan. 29, 2013).

both of which can be directly downloaded from the Internet.  See www.utorrent.com and http://new.vuze-downloads.com/.

18. Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

### B.  *The Initial Seed, Torrent, Hash and Tracker*

19. A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

20. The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

21. The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

22. When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free.  In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

23. Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each

5

piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

24. The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

25. The tracker computer or computers direct a peer user's computer to other peer users' computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

26. Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking).

C. *Torrent Sites*

27. "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol. There are numerous torrent websites, including www.TorrentZap.com, www.Btscene.com, and www.ExtraTorrent.com.

28. Upon information and belief, each Defendant went to a torrent site to upload and download Plaintiff's copyrighted Work

D. *Uploading and Downloading a Work Through a BitTorrent Swarm*

29. Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

6

30. The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

31. Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

32. In this way, all of the peers and seeders are working together in what is called a "swarm."

33. Here, each Defendant peer member participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

34. In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

35. Once a peer, here a Defendant, has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

E. *The Plaintiff's Computer Investigators Identified Each of the Defendants' IP Addresses as Participants in a Swarm That Was Distributing the Plaintiff's Copyrighted Work.*

36. The Plaintiff retained Crystal Bay Corporation ("CBC") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

37. CBC used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

38. CBC extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of: 5CD6DC7A993658B0168E3241C090D5EBA269482C (the "Unique Hash Number").

39. The IP addresses, Unique Hash Number, and hit dates contained on Exhibit A accurately reflect what is contained in the evidence logs, and show:

(A)   Each Defendant had copied a piece of the Plaintiff's copyrighted Work identified by the Unique Hash Number; and

(B)   Therefore, each Defendant was part of the same series of transactions.

40. Through each of the transactions, each of the Defendant's computers used their identified IP addresses to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

41. CBC's agent analyzed each BitTorrent "piece" distributed by each IP address listed on Exhibit A and verified that re-assemblage of the pieces using a

8

BitTorrent Client results in a fully playable digital motion picture of the Work.

42. CBC's agent viewed the Work side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

## MISCELLANEOUS

43. All conditions precedent to bringing this action have occurred or been waived.

44. Plaintiff retained counsel to represent it in this matter and is obligated to pay said counsel a reasonable fee for its services.

## FIRST CLAIM FOR RELIEF
### (Direct Infringement)

45. The Plaintiff incorporates the allegations in the foregoing paragraphs.

46. Plaintiff is the owner of the Registration for the Work which contains an original work of authorship.

47. By using the BitTorrent protocol and a BitTorrent Client and the processes described above, each Defendant copied the constituent elements of the registered work that are original.

48. The Plaintiff did not authorize, permit, or provide consent to the Defendants to copy, reproduce, redistribute, perform, or display its Work.

49. As a result of the foregoing, each Defendant violated the Plaintiff's exclusive right to:

(A) Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B)     Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C)     Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images; and,

(D)     Display the copyrighted Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work non-sequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display).

50.     Each of the Defendants' infringements was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

51.     By engaging in the infringement misconduct alleged in this Complaint, the Defendants thereby deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters, but also all persons involved in the production and marketing of this film, and also numerous owners of local theaters in Colorado, their employees, and, ultimately, the local Colorado economy (*see* Exhibit C attached to this Complaint.) The Defendants' misconduct therefore offends public policy.

52.     The Plaintiff has suffered actual damages that were proximately caused by each of the Defendants, including lost sales, price erosion, and a diminution of the value of its copyright.

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A)     permanently enjoin each Defendant and all other persons who are in active concert or participation with any Defendant from continuing to infringe the Plaintiff's

copyrighted Work;

(B) order that each Defendant delete and permanently remove the torrent file relating to the Plaintiff's copyrighted Work from each of the computers under each such Defendant's possession, custody, or control;

(C) order that each Defendant delete and permanently remove the copy of the Work each Defendant has on the computers under the Defendant's possession, custody, or control;

(D) award the Plaintiff either its actual damages and any additional profits of the Defendant pursuant to 17 U.S.C. § 504-(a)-(b) or statutory damages in the amount of $150,000 per Defendant pursuant to 17 U.S.C. § 504-(a) and (c), whichever is greater;

(E) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (Contributory Infringement)

53. The Plaintiff incorporates the allegations in the foregoing paragraphs.

54. The Plaintiff is the owner of the Registration for the Work which contains an original work of authorship.

55. By using the BitTorrent protocol and a BitTorrent Client and the processes described above, each Defendant copied the constituent elements of the registered Work that are original.

56. By participating in the BitTorrent swarm with the other Defendants, each

Defendant induced, caused or materially contributed to the infringing conduct of each other Defendant.

57.     The Plaintiff did not authorize, permit or consent to the Defendants' inducing, causing or materially contributing to the infringing conduct of each other Defendant.

58.     Each Defendant knew or should have known that other BitTorrent users, here the other Defendants, would become members of a swarm with the Defendant.

59.     Each Defendant knew or should have known that other BitTorrent users in a swarm with it, here the other Defendants, were directly infringing the Plaintiff's copyrighted Work by copying constituent elements of the registered Work that are original.

60.     Indeed, each Defendant directly participated in and therefore materially contributed to each other Defendant's infringing activities.

61.     Each of the Defendants' contributory infringements was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

62.     By engaging in the infringement misconduct alleged in this Complaint, the Defendants thereby deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters, but also all persons involved in the production and marketing of this film, and also numerous owners of local theaters in Colorado, their employees, and, ultimately, the local Colorado economy (*see* Exhibit C attached to this Complaint.)  The Defendants' misconduct therefore offends public policy.

63.     The Plaintiff has suffered actual damages that were proximately caused by each infringement of the copyright.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court enter a judgment in its favor against the Defendants jointly and severally and enter an order:

(A) permanently enjoining each Defendant and all other persons who are in active concert or participation with each Defendant from continuing to infringe the Plaintiff's copyrighted Work;

(B) that each Defendant delete and permanently remove the torrent file relating to the Plaintiff's copyrighted Work from each of the computers under each such Defendant's possession, custody, or control;

(C) that each Defendant delete and permanently remove the copy of the Work that each Defendant has on the computers under that Defendant's possession, custody or control;

(D) finding that each Defendant is jointly and severally liable for the direct infringement of each other Defendant;

(E) awarding the Plaintiff either its actual damages and any additional profits made by each Defendant pursuant to 17 U.S.C. § 504-(a)-(b) or statutory damages in the amount of $150,000 per Defendant pursuant to 17 U.S.C. § 504-(a) and (c), whichever is greater;

(F) awarding the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(G) granting the Plaintiff any and all further relief that this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

The Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 17th day of September, 2014.

Respectfully submitted,

/s/ *David J. Stephenson, Jr.*
David J. Stephenson, Jr.
2801 Youngfield St., Suite 300
Golden, Colorado 80401
Telephone: (303) 726-2259
Facsimile: (303) 362-5679
david.thunderlaw@gmail.com
Attorney for Dallas Buyers Club, LLC

**Plaintiff's Name and Address:**
Dallas Buyers Club, LLC
2170 Buckthorne Place, Suite 400
The Woodlands, TX 77380